IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

EARL D. JOHNSON, #252-782, 335-615   *

    Plaintiff,   *

v   *   Case No. GJH-16-871

RONALD MILL, MCI-H,   *
RICHARD SARTIN,
THE DEPARTMENT OF PUBLIC   *
SAFETY AND CORRECTIONAL
SERVICES,[1]   *
OFFICER ANNE MADDOX,
  *
    Defendants.
  *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Earl D. Johnson is an inmate at the Maryland Correctional Training Center in Hagerstown, Maryland. In this case, Johnson filed his Complaint, ECF No. 1, alleging Defendants violated his constitutional right to due process by finding him guilty of prison rule violations and imposing sanctions. Johnson also filed a self-styled "Motion Amended to Said Summary Judgment," ECF No. 29, which will be treated as a Motion to Amend his Complaint and granted. Defendants, the Department of Public Safety and Correctional Services ("DPSCS"), CO II Ronald Mills, CO II Richard Sartin, and Hearing Office Anne Maddox, have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 30, and Johnson filed a Response in Opposition, ECF No. 32. No hearing is necessary. Local Rule 105.6 (D. Md. 2016). For the following reasons, the Court grants Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 30.

---

[1] The docket shall be amended to reflect the agency's full name.

## I. BACKGROUND[2]

### A. Factual Background

Johnson's Complaint is based on events that occurred during the time he was incarcerated at the Maryland Correctional Institution-Hagerstown ("MCI-H"). Defendants filed affidavits and prison records in support of their Motion for Summary Judgment. The exhibits indicate that on July 6, 2014, Officer Stephens and Defendant Sartin escorted Johnson to the MCI-H recreation hall for a strip search. ECF No. 30-2 at 7.[3] During the escort, Sartin noticed Johnson's left hand was closed in a fist. Sartin ordered Johnson to open his hand in order to ascertain whether he was hiding anything. *Id.* Johnson opened and closed his left hand. Sartin observed an object between Johnson's left ring finger and pinkie finger. Sartin ordered Johnson to unclench his hand and separate his fingers. Sartin observed a piece of rubber glove containing a folded piece of paper with a small orange strip inside. Sartin secured the paper with the orange strip, and the officers conducted a strip search of Johnson. *Id.*

Sartin tested the orange strip with a MMC[4] field test kit. *Id.* The strip tested positive for Buprenorphine, a drug also known as Suboxone. The contraband was photographed. *Id.* Due to its small quantity, the contraband could not be weighed. Sartin issued a Notice of Rule Violation to Johnson, charging him with violating Rule 111 (possession or use of an unauthorized drug or substance) and Rule 112 (possession or use of a drug or controlled dangerous substance). ECF No. 30-3; *see also* ECF No. 30-2 at 3–13. Johnson acknowledges that on July 10, 2014, he received a Notice of Rule Violation for possessing the controlled substance Buprenorphine.[5]

---

[2] The facts relied on herein are either undisputed or viewed in the light most favorable to the non-movant.
[3] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system
[4] Defendants do not explain the MMC field test kit, but the Court assumes from the context that it is used to identify narcotics.
[5] Defendants' exhibits show that the Buprenorphine was discovered on July 6, 2014. ECF No. 30-2 at 2–5. Johnson's disciplinary hearing concerning his possession of the substance was held on July 10, 2014. *Id.* at. 21.

2

ECF No. 1 at 6.

## B. Procedural Background

On July 10, 2014, Defendant Hearing Officer Maddox conducted Johnson's disciplinary hearing. ECF No. 30-2 at 21. Johnson did not request representation or witnesses. Johnson pleaded not guilty and testified that the substance was found on the floor of his cell during a cell shakedown and that the officers charged him because his cellmate was scheduled for release on the next day. *Id.* at 21–23.

Hearing Officer Maddox's decision reads:

> Hearing Officer considered Notice of Inmate Rule Violation by CO R. Sartin, photo printouts, chain of custody form, and field test results as well as presentation of Earl Johnson. Johnson's presentation is that Officer Sartin found the strip on the cell floor and his cell buddy went home the next day so he got the charge. Hearing Officer is not persuaded by Johnson's presentation. Hearing Officer finds that Johnson was being escorted in the recreation hall for a strip search when Officer Sartin noticed the inmates' [sic] hand clinched shut, and when the officer asked Johnson to open his hand, a piece of rubber glove with a [sic] orange strip concealed inside was recovered from Johnson's hand. The issue did not occur in the cell and does not involve another inmate. Officer Sartin tested the orange piece of strip using the MMC Buprenorphine Test and got a positive result for Buprenorphine. Hearing Officer finds Johnson guilty of rule 112.

*Id.* at 23; *see also* ECF No. 30-4 (Office Maddox stating that she found Johnson's testimony unpersuasive). Maddox found Johnson not guilty of violating Rule 111. *Id.*

Maddox sanctioned Johnson with 225 days of segregation,[6] revoked 150 good time credits, and indefinitely suspended his visitation privileges for violating Rule 112. *Id.* at 23–24.[7] Johnson appealed Maddox's decision to Warden Richard Dovey, who affirmed the decision and sanctions on July 23, 2014. *Id.* at 26. Johnson subsequently filed a number of Administrative

---

[6] Institutional policy requires inmates sanctioned to more than 180 days of disciplinary segregation to either mail all appliances and non-allowable/excess property to an external address provide by the inmate, or the property will be destroyed. *See* ECF 30-2 at 44.

[7] Johnson's visitation privileges were reinstated on July 11, 2016. ECF No. 29-1 at 3.

Remedy Procedure ("ARP") requests in July and August 2014, which were each dismissed. These ARPs alleged that Defendant Mills improperly confiscated Johnson's property–ARP MCI-H-560-14, ARP MCI-H-630-14–and that the test for Buprenorphine was improperly executed, ARP MCI-H-0583-14, ARP MCI-H 0608-14, ARP MCI-H-0631-14, ARP MCI-H-0667-14. At the same time, Johnson filed Inmate Grievance Office ("IGO") complaints in June 2014 and February 2015. These were also dismissed. *See* ECF No. 30-5 at 3–4, 43–47, 78.

Johnson subsequently filed an action for replevin in *Johnson v. Mills*, Civil Case No. 1102-0002560-2014 in the District Court for Washington County. *See* ECF No. 30-2 at 48–49. The case was dismissed, and Johnson filed an appeal, Civil Case No. 21-C-15-53102 (Cir. Ct. Washington Cnty). *Id.*; ECF No 30-2 at 43–55. Johnson filed a separate action in the Circuit Court for Washington County for review of the dismissal of IGO Grievance No. 20141600. *In the Matter of Earl Johnson, Jr. for Judicial Review of the Decision of the Secretary of the DPSCS* was assigned Civil Case 2I-C-15-52799. ECF No 30-2 at 42–55.

On February 5, 2016, the Honorable Daniel P. Dwyer held a hearing on Johnson's consolidated appeals. *Id*. Present were Johnson, who appeared *pro se*, Officer Ronald Mills, and Assistant Attorney General Benjamin Legum. On February 19, 2016, Judge Dwyer entered judgment in Civil Case No. 21-C-15-53102, in favor of Defendant, Ronald Mills. Judge Dwyer found substantial evidence to support the IGO decision, and affirmed. The Opinion and Order reads in pertinent part:

> Regarding the de novo appeal from the District Court, this Court is not convinced by a preponderance of evidence that Mr. Johnson was wrongfully deprived of his property by Officer Mills. Officer Mills was acting within the scope of his duties following Division of Correction procedures. Officer Mills afforded Mr. Johnson the opportunity to safeguard his possessions by having them mailed to someone and Mr. Johnson simply declined that invitation. Therefore in the case 21-C-15-53102, judgment is entered in favor of the Defendant, Ronald Mills.

4

> In case 21-C-15-52799, the Court finds that there is substantial evidence in this record upon which the Inmate Grievance Office declined to grant Mr. Johnson the relief he requested. Again, the record indicates that Officer Mills was following the Division of Correction procedure. Mr. Johnson was not permitted to possess his items of electronic personal property in segregation. Also, pursuant to DOC regulations, they could not be stored for more than 180 days. Mr. Johnson could have, but declined to provide an address where they could be safely mailed. Therefore in that case the ruling of the Inmate Grievance Committee dated December 8, 2014 administratively dismissing Mr. Johnson's grievance is found to be supported by substantial evidence and is upheld.

*Id.* at 46.

Johnson disputes that the substance in his possession tested positive for Buprenorphine and alleges that he requested copies of the drug test results and the chain of custody. *Id.* Further, he complains that there was no retest of the sample. Johnson alleges that he was informed the test results were missing from his case file. He claims he was improperly found guilty of prison rule violations based on the test report. *Id.*; *see also* ECF No. 11; ECF No. 12. Johnson asserts that the state judge erred in dismissing the case because the drug test did not return a positive result. *Id.*

Johnson seeks $250 a day for "false solitary confinement" for 227 days; $250 a day for each day he was denied visitation privileges; and $900 for the wrongful loss or destruction of his property. *Id.*

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555) ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.").

The purpose of Fed. R. Civ. P. 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12 (b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). Because Johnson is self-represented, his filings are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the Court must also abide by its "affirmative obligation ... to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2002) (internal citations omitted). Accepting the facts as alleged in the Complaint as true, *see Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011), when reviewing a motion to dismiss, the Court "may consider documents attached to the complaint, as well as documents attached to the

6

motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013). The Court may take judicial notice of state court documents pursuant to Fed. R. Evid. 201 and 803(8)(a)(l). The claims against Defendants DPSCS, Mills, Sartin, and Maddox in their official capacities will be considered in the context of a Motion to Dismiss. Johnson's loss of property claim will also be considered under this standard of review.

### B. Motion for Summary Judgment

Defendants' motion is styled as a Motion to Dismiss, or in the Alternative, for Summary Judgment under Fed. R. Civ. P. 56. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as a "Motion to Dismiss, or in the Alternative, for Summary Judgment," and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metropolitan Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Johnson was provided with a *Roseboro* notice, which advised him of the pendency of the motion and that he was entitled to respond, ECF No. 10, and he did file a Response. *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (reasoning that *pro se* plaintiffs should

be advised of their right to file responsive material to a motion for summary judgment). Thus, the Court will consider his due process claim under the standard for summary judgment.

## III. DISCUSSION

Defendants argue that Johnson's due process rights were not violated at the adjustment hearing nor was he unconstitutionally deprived of his personal property. Defendants also raise Eleventh Amendment immunity, *res judicata*, and qualified immunity[8] as grounds for dismissal of the claims against them or summary judgment in their favor. ECF No. 30 at 1–2.

### A. Eleventh Amendment Immunity

Defendants assert that the federal claims against the DPSCS and the claims for damages against Maddox, Sartin and Mill should be dismissed as barred by the Eleventh Amendment. ECF No. 30-at 21. Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code, State Gov't § 12-202(a), it has not broadly waived its immunity to suit in federal court under the Eleventh Amendment. *See Gray v. Laws*, 51 F.3d 426, 431–32 (4th Cir. 1995) (noting that "it is well established that an unconsenting State is immune from suits brought in federal courts by her own citizens . . . ." (internal citations omitted)). DPSCS is a state agency, *see* Md. Code. Ann., Corr. Servs. § 1-101(f), and the claims against DPSCS will be dismissed because it is immune from suit under the Eleventh Amendment.

Further, judgment against a public employee "in his official capacity" imposes liability

---

[8] Having concluded Defendants' actions do not constitute a constitutional violation, the Court does not reach the qualified immunity defense.

8

on the public entity, and is also precluded under the Eleventh Amendment where the state has not consented to be sued in federal court. *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985) (citing *Monell v. New York Dept. of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978) (internal quotation omitted)). The Complaint is silent as to whether the allegations are raised against individual Defendants in their official or personal capacities, or both. To the extent Johnson claims against Maddox, Sartin and Mill are made in their official capacities, these claims are tantamount to claims against the State of Maryland, are barred by the Eleventh Amendment, and must be dismissed.

### B. Loss of Property Claim

To the extent Johnson's loss of property claim survives Eleventh Amendment immunity, Defendants assert *res judicata* as an affirmative defense. Under the doctrine of *res judicata*, a previous final judgment on the merits of an action precludes the parties, or those in privity with those parties, from relitigating issues that were or could have been raised in the earlier action. *See Meekins v. United Transp. Union*, 946 F.2d 1054, 1057 (4th Cir. 1991). When a federal court litigant asserts claim preclusion based on a state court judgment, "[the] federal court must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Maryland law, *res judicata*, or claim preclusion, provides grounds for dismissal if a defendant establishes that "(1) the present parties are the same or in privity with the parties to the earlier dispute, (2) the claim presented is identical to the one determined in the prior adjudication, and (3) there has been a final judgment on the merits." *Capel v. Countrywide Home Loans, Inc.*, No. WDQ-09-2374, 2010 WL 457534, at *3 (D. Md. Feb. 3, 2010) (citing *Anne Arundel County Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md.

9

2005)).

In this case, Johnson's loss of property claims are precluded by the doctrine of *res judicata*: (1) Johnson sued the same defendants in the state hearing; (2) Johnson raised the same arguments (that his property was illegally taken); and (3) Judge Dwyer addressed and found no merit to Johnson's claims that Property Officer Mills wrongfully deprived him of his personal property. Judge Dwyer's Memorandum and Opinion constitutes a final judgment; therefore, *res judicata* bars this claim.

### C. Due Process Claims

Johnson alleges that he was not afforded substantive or procedural due process in this case. The Court finds that he was given sufficient due process, and grants summary judgment to Defendants on these claims.

#### 1. Procedural Due Process

The procedural protections of the Due Process Clause only apply where a protected liberty interest is implicated. In the prison context there are two different types of constitutionally protected liberty interests which trigger due process protections. The first is created when there is a state-created entitlement to an early release from incarceration. *Bd. of Pardons v. Allen*, 482 U. S. 369, 381 (1987) (state created liberty interest in parole); *Wolff v. McDonnell*, 418 U. S. 539, 557 (1974) (state created liberty interest in good conduct credits). The second type of liberty interest is created by the imposition of an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U. S. 472, 484 (1995).

Courts have previously held that periods of administrative segregation, even with restrictive conditions, are not an "atypical and significant hardship" to trigger Due Process

protections. *See Incumaa v. Stirling*, 791 F.3d 517, 527 (4th. Cir. 2015); *Prieto v. Clarke*, 780 F.3d 245, 249 (4th. Cir. 2015). Rather, inmates must make a greater showing of hardship in order to meet this requirement. *Incumaa*, 791 F.3d at 527; *Prieto*, 780 F.3d at 249-51; *Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997). Johnson does not claim that the conditions of his segregation confinement were so restrictive as to meet the "atypical and significant hardship" standard in *Sandin*. As such, his procedural due process claim regarding his segregation is denied.

Regarding his claims that he was deprived Procedural Due Process regarding his good time credits, the Court finds that Johnson was afforded sufficient due process. Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution prisoners do not enjoy the full array of Procedural Due Process protections. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. These include: (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564–66, 592. As long as the hearing officer's decision contains a written statement of the evidence relied upon, due process is satisfied. *See Baxter v. Palmigiano*, 425 U.S. 308, 322 n. 5 (1976). Due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr.*

11

*Inst. v. Hill*, 472 U.S. 445, 455 (1985). Federal courts do not review the correctness of a disciplinary hearing officer's findings of fact. *See Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980). The hearing officer's findings will be disturbed only if they are unsupported by any evidence, or when wholly arbitrary and capricious. *See Hill*, 472 U.S. at 456; *see also Baker v. Lyles*, 904 F.2d 925, 933 (4th Cir. 1990).

It is undisputed that Johnson received written notice of the charges, a hearing, the right to call witnesses and present evidence, and a written decision. ECF No. 30-2 at 21–25. After the hearing, Maddox issued a written decision which identified the exhibits she reviewed, a summary of the parties' positions, and her finding that Johnson's testimony was unpersuasive. *Id.* This satisfies the "some evidence" standard. In a prison disciplinary hearing, prison officials generally are entitled to rely on institutional test results, absent any evidence of unreliability or irregularity in conducting the tests. *See, e.g., Terry v. Dep't of Public Safety & Correctional Services*, Civil Action No. ELH-11-1686, 2012 WL 2564779, at *8 (D. Md. June 29, 2012) (recognizing that a single drug test's results constituted "some evidence" to support prison disciplinary conviction). Presented with a positive test result on which prison officials were entitled to rely, Maddox was entitled to find the evidence sufficiently to constitute "some evidence." The Court is satisfied that Johnson was not deprived of due process, and summary judgment will be entered in favor of Defendants on this claim.

### 2. Substantive Due Process

Johnson also claims that he was not afforded sufficient Substantive Due Process. In the context of prison disciplinary proceedings, substantive due process requires that the fact-finder's decision be based on some evidence. *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). That standard can be met by an unsworn statement of an unidentified

confidential informant together with some indication of the informant's reliability. *See Baker v. Lyles*, 904 F.2d 925, 932 (4th Cir. 1990). On the other hand, the allegation that the outcome of a disciplinary hearing was based on false testimony, does not state a substantive due process claim. *See, e.g., Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986). *See also Kelly v. Cooper*, 502 F. Supp. 1371, 1376 (E.D. Va. 1980) (reasoning that the "court does not sit to review the factual findings of prison disciplinary committees.").

Here, the Court finds that Officer Maddox's decision was based upon sufficient evidence. In finding that Johnson had violated Rule 112, Officer Maddox relied on "Notice of Inmate Rule Violation by CO R. Sartin, photo printouts, chain of custody form, and field test results as well as presentation of Earl Johnson." ECF No. 30-2 at 23. Officer Maddox found Johnson's presentation unpersuasive, and found that he had violated Rule 112. *Id.* The Court finds that this was sufficient evidence for her to make her determination, and grants summary judgment for Defendants on Johnson's substantive due process claims.

### D. Violation of State Procedure

Johnson also attacks the procedures surrounding the test including chain of custody, lack of lab retesting, weight of sample, and Sartin's certification to perform the field test. Viewing the facts in the light most favorable to Johnson and assuming *arguendo* that a DOC rule or regulation was violated, the Court still grants summary judgment for Defendants on these claims. *See Riccio v. County of Fairfax*, 907 F.2d 1459, 1466 (4th Cir. 1990) ("a state does not necessarily violate the Constitution every time it violates one of its rules."); *Ewell v. Murray*, 813 F. Supp. 1180, 1183 (W.D. Va. 1995) ("Even if state law creates a liberty interest, violations of due process are to be measured against a federal standard of what process is due."). Failure to follow regulations does not itself result in a constitutional violation. The law is settled that the

failure to follow a prison directive or regulation does not give rise to a federal claim where, as here, the constitutional requirements are met. *See e.g. Myers v. Kelvenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *see also Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D. N.Y. 2002). As such, Defendants are entitled to summary judgment in their favor.

## CONCLUSION

For these reasons, the Court will grant Defendants' Motion to Dismiss or for Summary Judgment by separate Order.

Dated: September 12, 2017

GEORGE J. HAZEL
United States District Judge